CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
June 03, 2024
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MOUNTAIN VALLEY PIPELINE, LLC, )
)
Plaintiff, )
)
v. ) Case No. 7:24CV00352
)
ANDREW DEE HINZ, )
1427 Park Ave. )
Baltimore, MD 21217-4231, )
)
and )
)
KAREN S. BIXLER, )
1442 Dearing Rd. )
Bethel, VT 05032-9638, )
)
Defendants. )

COMPLAINT

Plaintiff Mountain Valley Pipeline, LLC ("MVP"), by counsel, for its complaint against defendants Andrew Dee Hinz ("Hinz") and Karen S. Bixler ("Bixler"), states as follows:

INTRODUCTION

1. MVP has all approvals needed to complete the Mountain Valley pipeline, and MVP is working to do so. Defendants are opposed to the project and are unwilling to accept the fact the project has been approved. Rather than abide by the statutes and court rulings authorizing completion of the project, defendants are determined to stop the work by unlawful means. MVP brings this action to enjoin defendants from interfering with the project and to recover damages for past interference.

## PARTIES

1. MVP is a natural gas company holding a certificate from the Federal Energy Regulatory Commission ("FERC") to construct and operate a new natural gas pipeline from Wetzel County, West Virginia, to Pittsylvania County, Virginia.

2. Work on the project is expressly authorized under the Fiscal Responsibility Act of 2023, which became law on June 3, 2023. Pub. L. No. 118-5, 137 Stat. 10 (2023). In this Act, Congress found and declared that timely completion of the MVP project is required in the national interest, and Congress ratified and approved all authorizations for completion of the project. *Id.* at § 324(b), (c).

3. Defendants and the other unlawful protesters supporting them are individuals opposed to the MVP project who have blocked the work that MVP is conducting in Roanoke County, Virginia.

## JURISDICTION AND VENUE

4. The Court has jurisdiction under 28 U.S.C. § 1332, based on diversity of citizenship and amount in controversy.

5. For purposes of diversity jurisdiction, MVP is a citizen of Pennsylvania, Florida, New York, Delaware, Virginia, Texas, and Ohio. Hinz is a citizen of Maryland. Bixler is a citizen of Vermont. As a result, there is complete diversity of citizenship between the parties.

6. The amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is proper under 28 U.S.C. § 1391(b) in that the events in question occurred in this district.

FACTS

8. The MVP project runs from Wetzel County, West Virginia, to Pittsylvania County, Virginia, and its crosses Roanoke County, Virginia.

9. MVP has easements to construct the pipeline in Roanoke County, Virginia. Honeysuckle Road is the sole access to sections of these easements, including those recorded in the Clerk's Office of the Roanoke County Circuit Court as Instrument Nos. 202000350, 201807929, and 202400973. The pipeline crosses Honeysuckle Road at one location, and Honeysuckle Road provides access to roads leading to the pipeline at other locations. Because Honeysuckle Road comes to a dead end past these locations, there is only one way in and one way out. If Honeysuckle Road is blocked, crews, tools, and equipment cannot reach these easements. These facts were known to defendants and the other unlawful protesters supporting them.

10. Defendants and the other unlawful protesters supporting them are members of a group of individuals who are unwilling to accept the fact that the MVP project is approved and can be constructed. Defendants and the other unlawful protesters supporting them are participating in a direct action campaign aimed at stopping the project by unlawful means.

11. One of the primary tactics of the campaign is for unlawful protesters to enter the public roadways and attach themselves to objects using sleeping dragon devices to prevent workers and equipment from accessing MVP's easements.

12. Although the unlawful protesters using the sleeping dragons can release themselves from the devices, law enforcement is required to assemble a cut team to saw through the devices in order to remove the individuals. As a result, removal of these individuals requires substantial resources of law enforcement and causes substantial delays and expenses for MVP.

13. On March 4, 2024, defendants, supported by other unlawful protesters, attached themselves to a disabled vehicle on Honeysuckle Road in Roanoke County, Virginia. The vehicle was positioned to block traffic on Honeysuckle Road. To prevent the vehicle from being moved, defendants attached themselves to the vehicle using sleeping dragon devices. As a result, defendants had to be extracted by law enforcement. Subsequently, the disabled vehicle was towed from the area.

14. The actions of defendants and the other unlawful protesters prevented workers and equipment from reaching MVP's easements from Honeysuckle Road. As a result, the crews were delayed for hours, and MVP incurred substantial expenses.

15. Defendants acted willfully, intentionally, and maliciously for the purpose of interfering with MVP's rights and authorized work on the project.

16. As a direct and proximate result, MVP has been deprived of the use and enjoyment of its easements, suffered delay in the completion of its project, and sustained other irreparable harm. MVP is therefore entitled to preliminary and permanent injunctive relief.

17. MVP has also sustained damages, costs, and attorney fees.

COUNT ONE—FOR
INTERFERENCE WITH EASEMENTS

18. MVP adopts and incorporates by reference its allegations in paragraphs 1-17 above.

19. By attaching themselves to a disabled vehicle on Honeysuckle Road and preventing access to MVP's easements, defendants have unlawfully interfered with MVP's property rights and easements, delayed work on the project, and increased the costs of the work.

20. As a direct and proximate result, MVP is entitled to preliminary and permanent injunctive relief and damages and attorney fees.

COUNT TWO—FOR
PRIVATE NUISANCE

21. MVP adopts and incorporates by reference its allegations in paragraphs 1-20 above.

22. By attaching themselves to a disabled vehicle on Honeysuckle Road, defendants created a substantial and unreasonable interference with MVP's use and enjoyment of its easements. This substantial and unreasonable interference constitutes a private nuisance.

23. The interference was substantial and unreasonable because MVP's easements are adjacent to the public road and cannot be accessed if the road is obstructed. The obstruction prevented access to MVP's easements, delayed work on the project, and increased the costs of the work.

24. As a direct and proximate result, MVP is entitled to preliminary and permanent injunctive relief and damages and attorney fees.

COUNT THREE—FOR
PUBLIC NUISANCE

25. MVP adopts and incorporates by reference its allegations in paragraphs 1-24 above.

26. By attaching themselves to a disabled vehicle on Honeysuckle Road, defendants created an unauthorized obstruction that wrongfully impeded the lawful use of the public road. This unauthorized obstruction constitutes a public nuisance.

27. As a result of the public nuisance, MVP sustained special injury. MVP is the holder of easements on land adjacent to the public road, and the obstruction prevented access to MVP's easements, delayed work on the project, and increased the costs of the work.

28. As a direct and proximate result, MVP is entitled to preliminary and permanent injunctive relief and damages and attorney fees.

COUNT FOUR—FOR
WILLFUL AND WANTON CONDUCT

29. MVP adopts and incorporates by reference its allegations in paragraphs 1-28 above.

30. Defendants had a duty to refrain from obstructing the public road and allowing an obstruction to remain in public road.

31. Defendants breached this duty by attaching themselves to a disabled vehicle on Honeysuckle Road and interfering with lawful use of the public road.

32. The conduct of defendants was willful and wanton in that defendants acted in conscious disregard of MVP's rights or with reckless indifference to consequences when the defendants were aware, from their knowledge of existing circumstances and conditions, that their conduct would probably result in injury to MVP.

33. As a direct and proximate result, MVP has sustained damages, costs, expenses, and attorney fees, and MVP is entitled to preliminary and permanent injunctive relief.

## COUNT FIVE—FOR COMMON LAW CONSPIRACY

34. MVP adopts and incorporates by reference its allegations in paragraphs 1-33 above.

35. Defendants and the other unlawful protesters supporting them have agreed and combined to accomplish by concerted action an unlawful purpose.

36. Defendants and other unlawful protesters supporting them formed a plan and agreement to obstruct a public road in order to interfere with work on the MVP project.

37. Further, defendants and other unlawful protesters supporting them formed a plan and agreement to place a disabled vehicle on Honeysuckle Road so that defendants could attach themselves to the vehicle in order to obstruct MVP crews from accessing adjoining easements and to prevent authorized work on the project.

38. Defendants and other unlawful protesters supporting them carried out the plan by placing a disabled vehicle on Honeysuckle Road so that defendants could attach themselves to the vehicle.

39. To carry out the plan, defendants and the other unlawful protesters supporting them entered the public road and gathered around the disabled vehicle, and defendants attached themselves with sleeping dragon devices.

40. Defendants and other unlawful protesters supporting them arranged for defendants to have sleeping dragon devices and other supplies for the attachment.

41. Defendants and other unlawful protesters supporting them decorated the disabled vehicle and arranged for defendants to have signs promoting the unlawful action. One of the signs said: "DOOM TO THE MOUNTAIN VALLEY PIPELINE."

42. The other unlawful protesters supporting defendants took pictures of defendants and the disabled vehicle and arranged for the pictures to be posted on social media with messages praising the unlawful actions and asking others to join them.

43. Defendants carried out the attachment with coordination and assistance from each other and the other unlawful protesters. Defendants and the other unlawful protesters supporting them worked together to carry out their unlawful plan and agreement.

44. The unlawful purpose of defendants and the other unlawful protesters supporting them was to delay or stop work on a project that Congress, the agencies, and the courts have determined should proceed.

45. Defendants and the other unlawful protesters supporting them have attempted to accomplish their purpose by unlawful means.

46. The unlawful means include the unlawful obstruction of a public road.

47. Each participant engaged in the common law conspiracy is jointly and severally liable for acts in furtherance of the conspiracy.

48. As a direct and proximate result, MVP has sustained damages, costs, expenses, and attorney fees, and it is entitled to injunctive relief.

COUNT SIX—FOR
STATUTORY CONSPIRACY

49. MVP adopts and incorporates by reference its allegations in paragraphs 1-48 above.

50. In violation of Virginia Code § 18.2-499A, defendants and other unlawful protesters supporting them have combined, associated, agreed, and mutually undertaken and acted in concert together for the purpose of (i) willfully and maliciously injuring MVP in its reputation, trade, business, and profession and (ii) willfully and maliciously preventing or hindering MVP from doing or performing lawful work.

51. Defendants and the other unlawful protesters supporting them are carrying out this statutory conspiracy through unlawful acts—interfering with the lawful use of a public road to access adjoining easements.

52. Each participant in the statutory conspiracy is jointly and severally liable for acts in furtherance of the conspiracy.

53. As a direct and proximate result of this statutory conspiracy, MVP has sustained damages, costs, expenses, and attorney fees and it is entitled to injunctive relief.

PRAYER

WHEREFORE, MVP prays that the Court:

1. Grant a preliminary and permanent injunction against defendants prohibiting them from:

(a) Entering MVP's easements;

(b) Blocking access to MVP's easements;

(c) Otherwise interfering with MVP's easements or the work of its contractors thereon;

(d) Aiding, abetting, encouraging, or promoting any activities being enjoined by the Court; and

(e) Soliciting or accepting money or other contributions for such activities.

2. Make the injunctions binding on defendants and their agents, servants, and employees and others in active concert and participation with him who have notice of the injunction.

3. Award MVP compensatory damages against defendants.

4. Award MVP punitive damages against defendants.

5. Award MVP treble damages against defendants under Count Six.

6. Award MVP its costs, expenses, and attorney fees.

7. Grant such other relief as the nature of the case may require.

Respectfully submitted,

MOUNTAIN VALLEY PIPELINE, LLC

By Counsel

Wade W. Massie
VSB No. 16616
Seth M. Land
VSB No. 75101
PENN, STUART & ESKRIDGE
P. O. Box 2288
Abingdon, Virginia 24212
Telephone: 276-628-5151
Facsimile: 276-628-5621
wmassie@pennstuart.com
sland@pennstuart.com

By *_/s/ Wade W. Massie_*
Wade W. Massie