CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 24, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, <br>     Plaintiff, <br><br> v. <br><br> ANDREW DEE HINZ, *et al.*, <br>     Defendants, and <br><br> COMMONWEALTH OF VIRGINIA, <br>     Intervenor. | Case No. 7:24cv00352 <br><br><br> By: Elizabeth K. Dillon <br>     Chief United States District Judge |
| MOUNTAIN VALLEY PIPELINE, LLC, <br>     Plaintiff, <br><br> v. <br><br> JOHN TED GLICK, *et al.*, <br>     Defendants, and <br><br> COMMONWEALTH OF VIRGINIA, <br>     Intervenor. | Case No. 7:24cv00353 <br><br><br> By: Elizabeth K. Dillon <br>     Chief United States District Judge |

**MEMORANDUM OPINION**

    These cases are two of five cases currently before this court in which plaintiff Mountain Valley Pipeline, LLC (MVP), brings claims against individuals who allegedly interfered with MVP's work constructing its natural gas pipeline. In each case, MVP has named two defendants. In the first, MVP has sued Andrew Dee Hinz and Karen S. Bixler. In the second, MVP has sued John Glick and Jane Califf. Pending before the court in each case (referred to herein as *Hinz* and *Glick*, respectively) is defendants' partial motion to dismiss (*Hinz*, Dkt. No. 10; *Glick*, Dkt. No. 11), which is fully briefed and was argued. For the reasons set forth herein, the court will deny in part and grant in part the motions to dismiss. The court will deny the motion to dismiss as to all counts except Count Four. The court will grant the motion to dismiss Count Four.

# I. BACKGROUND[1]

## A. Factual Background Relevant to Both Cases

MVP, a natural gas company, holds a certificate from the Federal Energy Regulatory Commission (FERC) to construct and operate a new natural gas pipeline from Wetzel County, West Virginia, to Pittsylvania County, Virginia. (Compl. ¶ 1, Dkt. No. 1.) On June 3, 2023, the Fiscal Responsibility Act of 2023 (the 2023 FRA) became law. In that Act, Congress declared that timely completion of the MVP project is required in the national interest, and Congress ratified and approved all authorizations for completion of the project. (*Id.* ¶ 2 (citing Pub. L. No. 118-5, 137 Stat. 10, at § 324(b) (c) (2023)).) *See also Appalachian Voices v. U.S. Dep't of the Interior*, 78 F.4th 71, 75–76 (4th Cir. 2023) (explaining some MVP-related aspects of the 2023 FRA).

MVP has easements to construct the pipeline in Roanoke, County Virginia. (Compl. ¶ 9.) Honeysuckle Road provides the sole access to sections of these easements. The pipeline crosses Honeysuckle Road at one location, and Honeysuckle Road provides access to roads leading to the pipeline at other locations, as well. Because Honeysuckle Road comes to a dead end past these locations, there is only one way in and one way out. If Honeysuckle Road is blocked, then crews, tools, and equipment cannot reach these easements. MVP alleges that these facts were known to defendants and "the other unlawful protestors supporting them." (*Id.*)

MVP alleges that defendants and others have been involved in a "direct action campaign aimed at stopping the project by unlawful means." (*Id.* ¶ 10.) One of the primary tactics used in that "campaign" was for protestors to enter public roadways and attach themselves to objects

---

[1] Unless otherwise noted, citations to the court record in these cases is solely to the *Hinz* case. As the parties note, the complaints and briefing in each case are virtually identical, with minor factual differences. (*See* Mem. Supp. Mot. Dismiss 1 n.1, Dkt. No. 11.)

using sleeping dragon devices.[2]  (*Id.* ¶¶ 11–12.)  They select the locations so as to prevent workers and equipment from accessing MVP's easements and to delay MVP's work.  (*Id.* ¶ 11.)  Although the protestors can release themselves, law enforcement is required to assemble a team to saw through the devices in order to remove them.  This process requires "substantial resources of law enforcement and causes substantial delays and expenses for MVP."  (*Id.* ¶ 12.)

## B. Specific Allegations Against Defendants

### 1. *Allegations against Hinz and Bixler*

On March 4, 2024, Hinz and Bixler, "supported by other unlawful protestors," attached themselves to a disabled vehicle on Honeysuckle Road.  The vehicle was positioned to block traffic on Honeysuckle Road.  To prevent the vehicle from being moved, defendants attached themselves to it using sleeping dragon devices.  (*Id.* ¶ 13.)

Ultimately, defendants had to be extracted by law enforcement, and the disabled vehicle was towed from the area.  (*Id.*)  Defendants' actions prevented workers and equipment from reaching MVP's easements, delaying its crews for hours and causing MVP to incur substantial expenses.  (*Id.* ¶ 14.)

---

[2]  There are different configurations for such a device, but in general terms,
> [a] "sleeping dragon" is used to slow the removal of a protestor from a protest location. A long metal pipe is secured in an immoveable object and the protester places their arm in the metal pipe. The arm is locked into place with a carabiner that is tied to the protestor's wrist. This set up enables protestors to unlock themselves, but prevents others from doing so. The metal pipe also prevents others from using bolt cutters to remove the protestor.

Christopher Rusnak, K.C. & Evelyn Rusnak, *In Defence of the Trees: Presenting the Case for Ancient Forest Rights*, 41 UCLA J. Env't. L. & Pol'y 361, 410 (2023).  Below is one possible configuration:



Alli Graham, *Mountain Valley Pipeline Protestors Charged After Using "Sleeping Dragon" to Attach Themselves to Equipment*, https://www.wsls.com/news/local/2023/09/05/mountain-valley-pipeline-protestors-charged-after-using-sleeping-dragon-to-attach-themselves-to-equipment/  (Sept. 5, 2023) (image credited to Virginia State Police).

*2. Allegations against Glick and Califf*

On April 10, 2024, John Glick and Jane Califf, "supported by other unlawful protestors," attached themselves to a structure placed on Honeysuckle Road. The structure was positioned to block traffic on Honeysuckle Road. Then, to prevent the structure from being moved, defendants attached themselves to it using sleeping dragon devices. (*Id.* ¶ 13.)

Ultimately, defendants had to be extracted by law enforcement, and the structure was then removed from the area. (*Id.*) Defendants' actions prevented workers and equipment from reaching MVP's easements, delaying its crews for hours and causing MVP to incur substantial expenses. (*Id.* ¶ 14.)

*3. Allegations and claims in both cases*

MVP asserts that defendants acted willfully, intentionally, and maliciously for the purpose of interfering with MVP's rights and authorized work on the project. (*Hinz*, Compl. ¶ 15.) MVP claims that defendants caused it to incur damages, costs, and attorneys' fees, and it also seeks injunctive relief, including permanent injunctive relief. (*Id.* ¶¶ 16–17.) Additional allegations are set forth in support of specific claims and will be addressed as necessary in context.

MVP asserts the same claims in each case, as follows:

> Count One – interference with MVP's easement and authorized work;
> Count Two – private nuisance;
> Count Three – public nuisance;
> Count Four – willful and wanton conduct;
> Count Five – common law conspiracy; and
> Count Six – statutory conspiracy under Virginia Code Ann. § 18.2-499A.

(*See generally* Am. Compl.) In their respective motions to dismiss, defendants seek dismissal of four of these counts—Counts One, Two, Four, and Six.

## II. DISCUSSION

Defendants in each case have answered the complaint, responding to some counts, but they seek dismissal of Counts One, Two, Four, and Six under Federal Rule of Civil Procedure 12(b)(6).[3] Defendants' basic arguments for dismissal are as follows:

1. The interference-with-easement claims (Count One) should be dismissed because there is no valid cause of action for "interference with easements" against a non-party to the easement.

2. The private nuisance claim (Count Two) should be dismissed because MVP does not allege that the alleged nuisance was visible or otherwise capable of detection from MVP's easement.

3. The wanton and willful negligence claim (Count Four) should be dismissed because MVP alleges that defendants *intentionally* caused harm, which means their conduct was not wanton and willful negligence.

4. The business conspiracy count (Count Six) should be dismissed because the Virginia business conspiracy statute, Virginia Code Ann. § 18.2-499 is unconstitutionally vague, on its face and as applied.

The final argument is the only one that involves the Commonwealth as intervenor. In briefing and at argument, the Commonwealth has defended the validity of the statute. The court addresses each argument in turn.

### A. Defendants' Motions Under Rule 12(b)(6)

*1. Rule 12(b)(6)*

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as

---

[3] In each case, MVP invokes this court's diversity jurisdiction under 28 U.S.C. § 1332. (*See Hinz*, Compl. ¶ 4; *Glick* Compl. ¶ 4.) And although their answers list a lack of subject-matter jurisdiction as an affirmative defense, defendants have not moved to dismiss based on a lack of jurisdiction, unlike in some related cases—those premised solely on federal-question jurisdiction. Based on the assertions in the complaints, moreover, it appears that there is complete diversity between the parties and the amount in controversy exceeds $75,000. (*E.g.*, *Hinz*, Compl. ¶¶ 4–6.) Defendants have not challenged those underlying allegations.

5

true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences in the complaint "in the light most favorable to the nonmoving party." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. The court also may consider documents incorporated by reference into the complaint and "matters of which a court may take judicial notice." *Kashdan*, 70 F.4th at 700 (citation omitted).

   2. *MVP has stated a claim for interference with its easement.*

Defendants first argue that an interference-with-easement claim in Virginia may only be brought by the easement holder against the servient landowner; it may not be brought against a third party. Thus, they claim that Count I must be dismissed because it does not state a valid claim. The court previously rejected this argument in a similar case, and it does so again here. *See* Minute Order, *Mountain Valley Pipeline v. Guidry*, No. 7:23-cv-00727 (W.D. Va. Mar. 4, 2024), ECF No. 15; Transcript of Hearing at 29, *Guidry*, No. 7:23-cv-00727, ECF No. 27 (setting forth grounds for ruling). The court set forth its reasoning in more detail in *Mountain Valley Pipeline v. Ateto*, 7:23cv00809, 2025 WL 837356, at *8 (W.D. Va. Mar. 17, 2025). For the same reasons set forth in *Ateto*, which the court incorporates herein by reference, the court concludes that MVP may bring an interference-with-easement claim against third parties like defendants, even if they are not parties to the easement and are not the servient landowner.[4] Thus, the court will deny the motions to dismiss Count One.

---

[4] In its briefing in these two cases, MVP has included additional cases—albeit from jurisdictions other than Virginia—holding or stating that an easement-bearer can bring a claim against a third party for interfering with an easement. (Opp'n to Mot. Dismiss 4–5, Dkt. No. 16.)

3. *MVP has adequately stated a claim for private nuisance.*

With regard to MVP's private nuisance claim, defendants argue that MVP's claim must be dismissed because the defendants' activities could not be viewed from MVP's easement, seizing upon language in *Adams v. Star Enter.*, 51 F.3d 417 (4th Cir. 1995). As the court discusses below, however, the language from *Adams* was specific to the factual situation before that court and not meant to exclude private nuisance claims like MVP's.

In Virginia,

> [a] private nuisance is a substantial and unreasonable interference with the use or enjoyment of a land owner or land possessor's property interests. According to the Virginia Supreme Court, nuisance "embraces everything that endangers life or health, or obstructs the reasonable and comfortable use of property." More specifically, an owner or an occupier of land has a right to recover against the operator of a private nuisance:
>
>> A private nuisance is the using, or authorizing the use of, one's property, or of anything under one's control, so as to injuriously affect an owner or occupier of property: (1) by diminishing the value of that property; (2) by continuously interfering with his power of control or enjoyment of that property; (3) by causing material disturbance or annoyance to him in his use or occupation of that property.

*Private nuisance: definition and general application*, Va. Prac. Tort & Personal Injury Law § 8:4 (footnotes omitted); *Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 665 (Va. 1992) (containing the same general description).

As noted, defendants rely on language from the Fourth Circuit's decision in *Adams*, 51 F.3d 417. There, plaintiffs brought a private nuisance claim against the nearby operator of an oil distribution facility after there was an underground oil spill. Although the plaintiffs' properties were not contaminated by the spill, they alleged that they had been "exposed to significant health risks resulting from fumes and vapors emanating from the spill." *Id.* at 421. They also alleged that residential life in their area was disrupted by remediation efforts, that they feared the spill

7

could spread to their properties in the future, and that the value of their properties had been affected.

According to the Fourth Circuit, "[t]he district court dismissed the [private] nuisance count of the complaint because it found the facts as alleged in the complaint did not create a significant interference with Landowners' use and enjoyment of their properties." *Id.* at 422. The appellate court surveyed Virginia cases regarding private nuisance claims and concluded, "We find no Virginia case permitting recovery for a private nuisance which is not visible or otherwise capable of physical detection from the plaintiff's property. Thus, to permit a nuisance claim under these facts would extend Virginia nuisance law beyond its current boundaries." *Id.* at 423.

Pointing to the language "capable of physical detection from the plaintiff's property," defendants argue that because the blocking of Honeysuckle Road was not "capable of physical detection" from any of MVP's easements, MVP cannot bring a private nuisance claim based on it.

That language, however, cannot bear the weight defendants assign it. In *Adams*, the plaintiffs were trying to recover for their fear of alleged future harm, which was not a valid nuisance claim. Indeed, *Adams* was subsequently described by the Fourth Circuit as precluding claims "based simply upon fear of future events." *Cavallo v. Star Enter.*, 100 F.3d 1150, 1154 (4th Cir. 1996); *see also Ogden v. Star Enter.*, 70 F.3d 1262 (4th Cir. 1995) (citing *Adams* as holding that "[n]either fear of harm nor diminution in property value resulting from mere proximity to the plume is enough"). A requirement for visibility or detectability makes sense in the context of hazards from a nearby or neighboring property, but that requirement makes no sense as applied to a claim for private nuisance where an obstruction to a public road blocks access to the plaintiff's property. The interference in such a case is the same regardless of

8

whether a plaintiff can view the obstruction from his property or not; the interference is not being able to access his property. The court thus concludes that the language in *Adams* did not graft a new requirement of visibility or proximity onto a private nuisance claim. It simply analyzed the factual situation before it.

MVP asserts that where a defendant prevents a plaintiff from accessing its property, that can give rise to a private nuisance claim, relying in part on *Fugate v. Carter*, 144 S.E. 483, 484 (Va. 1928). In *Fugate*, a neighbor had built a garage on an area that was designated as a "street" on recorded plats. The neighbor acknowledged that the placement of his garage was a "technical" violation but argued that it did not hurt or injure anyone. The court held that it created both a public and a private nuisance: "Of necessity, [the garage] is both a public and private nuisance—public in that it unreasonably obstructs traffic in a public street, and private because it directly diminishes the value of plaintiff's lots, in that it impedes free access to them." *Id.* at 484; *see also Bowers*, 419 S.E.2d at 665 (describing the phrase "use and enjoyment of land" for purposes of private nuisance as including "freedom from *physical interruption* with use of the land itself") (citation omitted) (emphasis added). That same analysis is applicable to the defendants' conduct in obstructing Honeysuckle Road. That is, they unreasonably obstructed traffic in a public street, and that impeded free access to MVP's easement, and thus interfered with MVP's use of its interest in the land.

Defendants attempt to distinguish *Fugate* on the ground that the garage there was apparently visible from the plaintiff's adjoining property. But that was not the focus of the opinion, nor did the court rely on that fact. And the facts in *Fugate* are much more similar to the facts here as compared to *Adams*. As discussed, the language in *Adams* must be understood in context, which involved an underground spill that was not on plaintiffs' property, had not affected their property, and not caused any harm to them or their property, but that they were

9

afraid would cause damages. It does not mean that every nuisance must require some encroachment visible from the plaintiff's property. Nor does it state a new rule that when a plaintiff's access to his property is blocked, the blockade must occur within physical view of his property. Indeed, *Fugate* and the general language of private nuisance (discussing an "interruption" with use of land) support MVP's claim. The motion to dismiss Count Two will be denied.

    4. *Count Four fails to allege sufficient facts to support a claim for willful and wanton negligence.*

Defendants next seek dismissal of Count Four, MVP's claim for willful and wanton negligence. They argue that MVP cannot allege both intentional conduct intended to cause harm *and* state a claim for willful and wanton negligence because the two are inconsistent. They rely heavily on *Infant C. v. Boy Scouts of America, Inc.* 391 S.E.2d 322 (Va. 1990), which discussed at length the difference between "intentional" misconduct and "willful and wanton" conduct.

In response, MVP disagrees with defendants' analysis. It contends that defendants misunderstand the cases on which they rely, including *Infant C*. MVP acknowledges that it has alleged that defendants intended to cause harm, but it also has alleged that defendants acted "in conscious disregard of MVP's rights or with reckless indifference." Noting authority allowing it to plead in the alternative, MVP asserts that its pleading should be so construed. (MVP Resp. 9, Dkt. No. 16.) Defendants insist, though, that MVP has not, in fact, pled in the alternative, noting that "the allegation of intentional harm is incorporated by reference[] into Count Four." (Mem. Supp. Mot. Dismiss 5, Dkt. No. 11 (citing Compl. ¶¶ 15, 29).)[5]

As relevant here, *Infant C.* clarified that an "actor guilty of intentional misconduct must

---

[5] Paragraph 29 is the first paragraph of Count Four and incorporates by reference prior allegations, including those in paragraph 15. Paragraph 15 states, "Defendants acted willfully, intentionally, and maliciously for the purpose of interfering with MVP's rights and authorized work on the project."

10

intend to cause harm to another," while an "actor guilty of willful and wanton conduct intends his act, but not the resulting harm." 391 S.E.2d at 328 (citations omitted). Elsewhere, the *Infant C.* court expressly adopted the following distinction:

> Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless.

*Id.* (quoting *Restatement (Second) of Torts* § 500 comment f (1965) and adopting it).

Applying that definition here, the court agrees with defendants that MVP has failed to allege a valid claim for willful and wanton negligence. The underlying premise of both complaints is that defendants intended to cause harm to MVP, in the form of delays to MVP's pipeline construction. Indeed, they were specifically trying to prevent construction of MVP's pipeline, as MVP repeatedly alleges. (*See, e.g.*, *Hinz*, Compl. ¶¶ 10–11 (explaining that defendants are trying to "stop[] the project by unlawful means," that their actions are designed to "prevent workers and equipment from accessing MVP's easements"); *id.* ¶ 15 (alleging defendants acted willfully, intentionally, and maliciously for the purpose of interfering with MVP's rights and authorized work on the project"); *see also generally* Counts Five & Six (asserting conspiracy claims and including numerous statements that the "plan" was to "obstruct MVP crews from accessing adjoining easements and to prevent authorized work on the project"). MVP includes no *facts* to suggest that their conduct was simply reckless, but that they "hope[d] or even expect[ed]" their conduct "to prove harmless." *Cf. Infant C.*, 391 S.E.2d at 328. As described by the *Infant C.* court, then, the conduct alleged is intentional conduct, not willful and wanton conduct.

MVP is correct that it *may* plead such a claim in the alternative, but that alternative claim

11

must nonetheless be supported by adequate *facts*—not merely legal conclusions. And the court recognizes that MVP's complaints include the legal conclusion that defendants' conduct was "willful and wanton in that defendants acted in conscious disregard of MVP's rights or with reckless indifference to consequences when the defendants were aware . . that their conduct would probably result in injury to MVP." (*Hinz*, Compl. ¶ 32.) That language, though, is a "mere recitation of the legal standard" or elements of a claim, which is insufficient to survive a motion to dismiss. *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). Other courts, faced with similar scenarios, have reached the same conclusion. *E.g.*, *Oldham v. Univ. of N. Carolina*, No. 1:22CV513, 2023 WL 3984031, at *18 (M.D.N.C. June 13, 2023) (dismissing negligence claims for failure to state a claim where plaintiff couched her conclusions in negligence terms, but her allegations involved intentional acts, and explaining that "[w]hile one may plead claims in the alternative, one cannot commit an intentional act negligently"); *Hamstead v. Walker*, No. 3:18-CV-79, 2019 WL 12313459, at *7 (N.D.W. Va. June 7, 2019) ("[I]t is clear that plaintiff's theory is that [defendant's] alleged actions "were intentional, not negligent. Although plaintiff may plead in the alternative, there must be some support in fact for doing so. Here, plaintiff's negligence claim against [defendant] simply is not supported by her factual allegations . . . .").

Because MVP clearly has alleged that defendants intended to harm it and has failed to allege any facts to show that they acted only with recklessness as to whether MVP would be harmed, the court will grant the motion to dismiss Count Four and dismiss it without prejudice.

    5. *Virginia Code Ann. § 18.2-499 is not unconstitutionally vague.*

In challenging the constitutionality of Virginia's business conspiracy statute, defendants claim that the statute is unconstitutionally vague both on its face and as applied to defendants. They take issue, in particular, with the word "malicious[]" as it appears in the statute. In relevant

part, the statute states:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

Va. Code Ann. § 18.2-499A.

The court has carefully considered the briefing of the parties and the Commonwealth's intervenor brief, in which there is significant disagreement on a number of issues related to the constitutionality of the statute. The court need not wade into any analysis about most of those disagreements. Instead, it concludes first that the statute is not unconstitutionally vague as applied to defendants. The court further finds that the failure of defendants' as-applied challenge precludes their facial challenge to the statute.

    a. *The statute is not unconstitutionally vague as applied to defendants.*

In determining whether a statute is unconstitutionally vague, the court assumes, without deciding, that the statute here would be subject to a stricter vagueness test on the grounds that it is quasi-criminal because of the corresponding treble damages provision in Virginia Code Ann. § 18.2-500A.[6] And defendants correctly note that the vagueness doctrine applies strictly in the

---

[6] The parties disagree about whether a higher standard should be applied in determining vagueness, as compared to a purely civil statute, either because § 18.2-499 is a quasi-criminal statute or because it sufficiently implicates First Amendment speech or association rights. *Cf. Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982) (explaining that a civil statute "is subject to a less strict vagueness test"); *Boutilier v. INS*, 387 U.S. 118, 123 (1967) (noting that the "less strict test" is that a statute is not vague unless it is "so vague and indefinite as really to be no rule or standard at all"); *Little v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 699, 704–05 (W.D. Va. 2015) (explaining that a more stringent test applies where a statute "threaten[s] to inhibit the exercise of constitutionally protected rights"). On the latter point, MVP and the Commonwealth counter that because the statute only prohibits an agreement to engage in *unlawful* conduct or lawful conduct by *unlawful* means, protected First Amendment activity is necessarily outside of its scope. The court applies the more stringent standard because, even under that standard, the statute is not unconstitutionally vague as applied to defendants.

13

criminal and quasi-criminal contexts. *Manning v. Caldwell*, 930 F.3d 264, 272–73 (4th Cir. 2019) (en banc) (explaining that quasi-criminal statutes must be evaluated for vagueness under a "relatively strict test"); *cf. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018) (stating that the treble-damages provision in the False Claims Act suggests the "gravity and 'quasi-criminal nature' of FCA liability").

The Supreme Court has explained:

> A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement. *United States v. Williams,* 553 U.S. 285, 304, 128 S. Ct. 1830, 170 L.Ed.2d 650 (2008). . . . [W]hen a statute "interferes with the right of free speech or of association, a more stringent vagueness test should apply." [*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499]. "But 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.' " *Williams, supra,* at 304, 128 S. Ct. 1830 (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 794, 109 S. Ct. 2746, 105 L.Ed.2d 661 (1989)).

*Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010).

A criminal statute is unconstitutionally vague if it "fails to provide any standard of conduct by which persons can determine whether they are violating the statute or does not provide 'minimal guidelines to govern law enforcement.'" *Manning*, 930 F.3d 264, 274 (4th Cir. 2019) (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). In an as-applied challenge, a statute will not be deemed vague "if the terms are clear in their application to" defendants' conduct. *Holder*, 561 U.S. at 21. The court finds that standard is satisfied here.

Importantly, in analyzing a state statute on vagueness grounds, the court must treat it as if it contains all of its legal interpretations from the state's highest court. *See Kolender*, 461 U.S. at 355 n.4 (explaining that federal courts facing a vagueness challenge to a state statute "must take the statute as though it read precisely as the highest court of the State has interpreted it") (citation

14

omitted); *see also Cap. Assoc. Indus., Inc. v. Stein*, 922 F.3d 198, 210 (4th Cir. 2019).  As relevant here, the Supreme Court of Virginia has held that the word "maliciously" in § 18.2-499 means "legal malice." *Com. Bus. Sys., Inc. v. BellSouth Servs.*, 453 S.E.2d 261, 266–67 (Va. 1995) (explaining that it is not necessary to prove that the defendant conspirators acted with ill-will, hatred, or spite directed toward the plaintiff, only that they acted "intentionally, purposefully, and without lawful justification").  *See also Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014) (explaining same and setting forth elements of statutory conspiracy claim).

    Defendants acknowledge the authority stating that this court must treat the statute as if amended by Virginia's highest court.  Defendants contend, though, that the Supreme Court's decision in *United States v. Davis* means that this court should ignore the Supreme Court of Virginia's definition of maliciously when evaluating the statute for vagueness.  588 U.S. 445 (2019).  In particular, defendants rely on language in *Davis* that says, "Respect for due process and the separation of powers suggest that *a court may not . . . construe a criminal statute to penalize conduct that it does not clearly proscribe.*"  (*Hinz*, Reply to Commonwealth's Br. 3, Dkt. No. 27) (quoting *Davis*, 588 U.S. at 464 (emphasis added by defendants)).)  Based on this, defendants assert that *Davis* precludes a state court from expanding the reach of a criminal statute because it is inconsistent with due process and separation-of-powers principles, although that court may narrow a state statute without running into vagueness problems.  (*Id.* (quoting *Davis*, 588 U.S. at 464).)  But *Davis* was discussing the Supreme Court's own obligation to not rewrite or broaden a statute "in order to save Congress the trouble of having to write a new law." *Davis*, 588 U.S. at 564.  Indeed, that is the language omitted by defendants in their brief.

    Although the principle in *Davis* arguably is one of general application, the Court did not state that the same rule would prohibit the highest court of a state from interpreting its own

15

state's statute. Furthermore, defendants cite to no decision, subsequent to *Davis*, that has said in a vagueness challenge, interpretations by a state's highest court cannot be considered if they "broaden" instead of "narrow" a criminal statute.

Thus, the court includes the definition of "legal malice" in evaluating the statute for vagueness.[7] With that definition, then, the statute imposes liability on those who: (1) conspire to commit an unlawful (or tortious) act or an otherwise lawful act through unlawful or tortious means; and (2) do so with legal malice, *i.e.*, act "intentionally, purposefully, and without lawful justification."

With the statute so construed, the court agrees with MVP and the Commonwealth that the statute is not vague as applied to the alleged conduct here. According to the complaint, defendants conspired to block ingress and egress on a public road—and thereafter did so—specifically to prevent a party from reaching its easements so it could perform work it was entitled to perform on its property. They also failed to disperse when requested by law enforcement and had to be removed by law enforcement from the area. These actions easily qualify under the statute as unlawful actions, and MVP clearly has alleged that defendants acted at least with "legal malice," as required in Virginia. Indeed, both complaints are replete with allegations that defendants acted "intentionally, purposefully, and without lawful justification," *see Com. Bus. Sys., Inc.*, 453 S.E.2d at 266–67. (*See generally* Compl.)

---

[7] Defendants offer two other primary arguments as to why, even treating the *Commercial Business Systems* ruling as incorporated into the statute, the term "maliciously" remains vague. First, they assert that Virginia's trial courts allegedly have exhibited confusion over the proper meaning of "malice" in the statute, even after *Commercial Business Systems*. (Mem. Supp. Mot. Dismiss 10–11; Reply 6, n.5, Dkt. No. 17.) The Commonwealth disagrees. (Commonwealth Opp'n to Mot. Dismiss 9–10, Dkt. No. 26.) Second, they argue that persons of ordinary intelligence would reasonably assume that actual malice—not legal malice—is required to violate the statute.

Even if there is confusion and even if the ordinary person might generally understand "malice" to include a requirement of ill-will or hatred, the law instructs that these facts alone do not render the statute vague. *See Rose v. Locke*, 423 U.S. 48, 50 (1975) (reasoning that a statute is not vague simply because "trained lawyers" must "consult legal dictionaries, treatises, and judicial opinions" to understand it); *see also Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 n.4 (4th Cir. 2013) (citing *Rose* for same proposition). Thus, the court rejects these additional arguments, as well.

        b. *Because their as-applied challenge fails, defendants' facial challenge necessarily fails.*

Having found that the as-applied challenge fails, defendants may not assert a facial challenge to the statute, as the Fourth Circuit has repeatedly—and recently—noted. *E.g., United States v. Hasson*, 26 F.4th 610, 615 (4th Cir.), *cert. denied,* 143 S. Ct. 310 (2022); *see also Lumumba v. Kiser*, 116 F. 4th 269, 285 (4th Cir. 2024) (explaining that if an as-applied challenge fails, then no facial challenge can succeed and that is true "'even to the extent a heightened vagueness standard applies" because of First Amendment implications) (quoting *Holder*, 561 U.S. 1).

Defendants contend that *Hasson* is inconsistent with the Supreme Court's prior decision in *Davis*, 588 U.S. 445.[8] But *Hasson* was a post-*Davis* case that considered and rejected the precise argument defendants raise here, 26 F.4th at 616–21 (discussing issue at length), as defendants acknowledge. (Mem. Supp. Mot. Dismiss 7 n.2.) In *Hasson*, the criminal defendant's argument was based on two other Supreme Court cases (*Johnson* and *Dimaya*),[9] the Fourth Circuit also cited to *Davis*—but as *supporting* its conclusion. 26 F.4th at 620. The relevant holding from *Hasson* is as follows:

> For these reasons, we conclude that *Johnson* and *Dimaya* "did not alter the general rule that a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge." *Cook*, 970 F.3d at 877. It follows that neither decision clearly undermined our precedents espousing that rule. And any exceptions must originate from the Supreme Court, whose longstanding precedents supply the rule's foundation. Because Hasson does not contest that Section 922(g)(3) clearly applies to his conduct, his attempt to assert a facial vagueness challenge fails.

*Hasson*, 26 F.4th at 620–21. *Hasson*, which is obviously binding on this court, precludes

---

[8] *Davis* struck down the residual clause in 18 U.S.C. § 924(c) as unconstitutionally vague.

[9] *Johnson v. United States*, 576 U.S. 591 (2015); *Sessions v. Dimaya*, 584 U.S. 148 (2018).

defendants' assertion that they should be permitted to make a facial challenge even if their as-applied challenge fails. Thus, defendants' facial vagueness challenge to § 18.2-499 is not properly before the court.

## III. CONCLUSION

For the foregoing reasons, the court will deny in part (as to Counts One, Two, and Six) and grant in part (as to Count Four) the motions to dismiss. An appropriate order will be entered.

Entered: March 24, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge